UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| APRIL P.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cv-00192-SEB-KMB |
| | ) |
| MARTIN J. O'MALLEY,[2] | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff April P. brings this action seeking judicial review of the denial of disability insurance benefits from the Social Security Administration ("SSA"), alleging an onset date of June 28, 2014. The Court previously granted an appeal in April's favor upon a joint motion by the Parties and remanded the case back to SSA. *April P. v. Kijakazi*, Case No. 4:21-cv-192-DML-JMS. On remand, Administrative Law Judge Thuy-Anh T. Nguyen (the "ALJ") conducted a hearing on March 31, 2023. [Dkt. 11-12 at 44-85.] The ALJ issued a decision on May 13, 2023, concluding that April was not entitled to receive disability insurance benefits. [*Id.* at 12-32.] The Appeals Council denied April's request for review on September 29, 2023. [*Id.* at 2-5.]

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

pending motion. For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE** the Commissioner's decision finding that April was not disabled and **REMAND** for further proceedings.

## I.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. RELEVANT BACKGROUND[3]

April was 42 years old when she applied for disability benefits on November 30, 2018. [Dkt. 11-5 at 2.] She had graduated from high school and previously worked as a cashier and a packer/sealer. [Dkt. 11-2 at 45-46.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that April was not disabled. Specifically, the ALJ found as follows:

- At Step One, April met the insured status requirements of the Social Security Act through March 31, 2016, but not thereafter. [Dkt. 11-12 at 15.]

- At Step Two, April had the following severe impairments: disorders of the spine, carpal osteoarthritis in the left wrist, bilateral sacroiliac joint osteoarthritis, bunion deformities in both feet, rheumatoid arthritis, diabetes mellitus, obesity, an affective disorder (variably diagnosed as bipolar disorder and schizoaffective disorder), anxiety disorder (variably diagnosed as panic disorder), attention deficit hyperactivity disorder, and post-traumatic stress disorder. [*Id.* at 16.]

- At Step Three, April did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.*]

- After Step Three but before Step Four, April had the RFC "to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except as follows: She can sit a total of 6 hours in an 8-hour work day; stand and/or walk a total of 4 hours in an 8-hour work day due to deficits at spine, sacroiliac joints, and bunions; frequently climb ramps and stairs; frequently balance, kneel, and crawl; occasionally stoop and crouch; occasionally climb ladders, ropes, or scaffolds; occasionally work at high unprotected heights or around heavy or moving machinery; understand, remember, and carry out simple instructions; make judgment commensurate with the functions of simple, repetitive tasks; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with changes in a routine work setting." [*Id.* at 19.]

- At Step Four, April was unable to perform any past relevant work. [*Id.* at 30.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

4

- At Step Five, relying on the VE testimony and considering April's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that April could have performed through the date of the decision, including Routing Clerk, Marking Clerk, Office Helper, Inspector, Sorter, and Assembler. [*Id.* at 30-32.]

### III. DISCUSSION

April raises three issues, each of which relates to her mental RFC: (1) whether the ALJ erred in conducting April's subjective symptom analysis; (2) whether the ALJ erred by relying on stale opinions of state agency psychological consultants from 2019 despite the existence of new evidence; and (3) whether the ALJ's mental RFC restrictions are supported by substantial evidence. The Court will address each of these issues in turn.

**A. Subjective Symptom Analysis**

April argues that the ALJ erred in conducting a subjective symptom analysis for four reasons: (1) she improperly concluded that April's psychiatric condition significantly improved based on her own lay interpretation of medical records, which emphasized normal findings and minimized or failed to acknowledge abnormal findings; (2) she relied on gaps in April's mental health treatment without inquiring about the reasons for those gaps; (3) she improperly characterized April's psychiatric treatment history as conservative; and (4) she relied on normal exam findings without considering the significance of abnormal exam findings. [Dkt. 14 at 15.]

The Commissioner responds that the ALJ did not improperly rely on her lay interpretation of medical records but instead accurately determined that April's medical records as a whole showed that her mental examination findings were generally unremarkable. [Dkt. 17 at 10.] He argues that the ALJ "did not rely on the gaps in [April's] treatment to draw any negative inference" but instead "simply underscored that [April] did not have the evidence corroborating [her] allegations during those times." [*Id.* at 11.] He argues that the ALJ properly relied on April's

5

conservative treatment history as evidence that her symptoms were not as severe as she alleged. [*Id.*] And he argues that the ALJ thoroughly discussed both normal and abnormal findings in April's medical records and "weighed the evidence carefully in arriving at the RFC finding." [*Id.*]

In reply, April argues that the ALJ did not meaningfully weigh the evidence; instead, she merely listed normal and abnormal exam findings side-by-side and then concluded without explanation that April's condition had improved. [Dkt. 18 at 8-9.] She argues that there is no basis to conclude that the ALJ mentioned gaps in April's treatment simply to point out a lack of evidence about those time periods. [*Id.* at 9-10.] Finally, she argues that the ALJ erred by characterizing April's treatment history as "conservative" simply because she was not hospitalized during the relevant time period, which overlooks the fact that medication and therapy are generally accepted treatments for serious mental health disorders. [*Id.* at 10.]

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process. First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including but not limited to the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determinations special deference, and

6

it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

April's medical records show that she was hospitalized for psychiatric conditions for four days in December 2012, which was about eighteen months before her alleged onset date. [Dkt. 11-7 at 53-72.] During the period of alleged disability, April voluntarily underwent therapy and medication management. [*E.g.*, dkt. 11-9 at 181-85 (October 28, 2014, intake paperwork for self-referred therapy at LifeSpring Health Systems).] She sought treatment "to help prevent regression and relapse into severe mood swings and depression." [*Id.* at 204 (Outpatient Progress Note August 27, 2018).] At some points during the course of her treatment, her symptoms got worse. [*E.g.*, *id.* at 207-08 (November 19, 2018: depression worsening, auditory hallucinations persisting); *id.* 307-08 (March 11, 2019: depressed, very tired, experiencing auditory hallucinations).] At other points, she was doing much better. [*E.g.*, *id.* at 231 (May 18, 2018: "Client reported since starting the medication 'I feel less anxious, more calm, less depressed, and the auditory hallucinations are . . . becoming less frequent.").] At the administrative hearing on March 31, 2023, April testified that her condition had improved in some ways. For example, her visual hallucinations had reduced in frequency to three or four times a week, and her auditory hallucinations had stopped completely for the last six months in response to an increase in medication. [Dkt. 11-12 at 55, 57.] She also testified that in other ways, her condition had stayed about the same. [*Id.* at 58 ("I don't sleep very good at night because I have nightmares or night terrors.").]

The ALJ's opinion reflects the ebb and flow of April's mental health symptoms. The opinion notes that at times certain symptoms were controlled by medication and therapy, while at other times these same symptoms would return. [Dkt. 11-12 at 25 (noting that April reported

7

hallucinations and self-harm in March and April 2018, but no perceptual impairments in January 2019).] The opinion also notes that during a single therapy appointment, April might show improvement in some symptoms and deterioration in others. [*Id.* (noting that April was well-groomed, fully oriented, and in a relaxed mood in December 2018 but also reported experiencing auditory hallucinations).] April argues that the ALJ erred by listing such positive and negative findings side-by-side without analyzing her progress as definitively improving or deteriorating, but the ALJ's opinion paints a reasonably accurate picture of her treatment and condition over the course of nearly a decade. Although April was never "cured" of her psychiatric conditions, overall her symptoms remained manageable and did not require more than routine therapy and occasional adjustments to medication.

  The Court is not persuaded by April's argument that the ALJ impermissibly relied on gaps in treatment to undermine her claims about the severity of her symptoms. The opinion does state that April had "a history of therapy compliance issues, with more than one discharge and periods without significant treatment," [*id.* at 27], but it does not expressly rely on her non-compliance to cast doubt on the veracity of her claims. The Court finds that the ALJ's statements about April's history of non-compliance with treatment accurately reflects her medical records, [*e.g.*, 11-9 at 192-93 (March 20, 2017, treatment record discharging April for non-compliance with therapy)], and the Court declines April's invitation to assume that the ALJ's statements are proof of impermissible reasoning.

  As mentioned above, the Court may only overturn the ALJ's decision if the subjective symptom analysis was patently wrong. Here, the ALJ found that April's symptoms support restrictions on her ability to work but "do not suggest the need for total work preclusion" as she claims. [Dkt. 11-12 at 25.] Having reviewed the record and the Parties' arguments, and giving all

8

due deference to the ALJ's reasoning, the Court finds that the ALJ's subjective symptom analysis was not patently wrong, and April has not shown reversible error on this issue.

### B. Medical Opinions

The ALJ relied on two expert medical opinions in determining April's mental RFC. In February 2019, psychologist and state agency consultant Dr. J. Gange opined that April could understand, carry out, and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with changes in a routine work setting." [Dkt. 11-3 at 27.] In May 2019, Dr. Kari Kennedy affirmed Dr. Gange's opinion. [Dkt. 11-3 at 45.] The ALJ found these opinions persuasive and rejected a less-restrictive opinion from another state agency psychologist from 2018. [Dkt. 11-12 at 29.]

April argues that the ALJ erred by relying on these opinions because they were made four years before the ALJ issued her decision in 2023. [Dkt. 14 at 11-15.] She argues that the ALJ needed to seek a new expert medical opinion to evaluate new evidence that arose during the four-year interlude. [*Id.*] This evidence includes medical records showing that April had "fair" insight and impulse control, was experiencing "variable hallucination severity and frequency based on her medication dosages and exposure to stress," increased anxiety and stress, difficulty sleeping due to nightmares resulting in fatigue, and trouble focusing. [*Id.* at 12.] She expressly relies upon the Seventh Circuit's decision in *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), where the denial of disability benefits was reversed based on the ALJ's reliance on an outdated medical opinion. [*Id.* at 13.]

In response, the Commissioner argues that *Moreno* is distinguishable. Whereas *Moreno* held that an ALJ should not rely on "an outdated assessment if later evidence containing new,

9

significant medical diagnoses reasonably could have changed the reviewing physician's opinion," 882 F.3d at 728-29, the Commissioner argues that in this case, "the evidence that came after Dr. Gange and Dr. Kennedy issued their opinions does not show any significant changes in the symptoms." [Dkt. 17 at 13-14.] To the contrary, the Commissioner argues, April did not exhibit any new symptoms, and her symptoms did not fluctuate to an extent that a new medical opinion was required. [*Id.* at 14.]

April replies that the medical evidence between 2019 and 2023 would have mattered to a reviewing psychologist and that the ALJ impermissibly substituted her own lay interpretation of April's medical records for that of a qualified expert. [Dkt. 18 at 5-7.]

The Court finds that the ALJ did not err in relying on the medical opinions of Dr. Gange and Dr. Kennedy. In *Moreno*, the ALJ relied on the opinion of an expert who determined that the claimant did not have major depressive syndrome because he had not demonstrated evidence of sleep disturbances or thoughts of suicide. 882 F.3d at 728. The expert also opined that the claimant had only mild limitations in social functioning. However, that expert did not have the benefit of subsequent medical records showing that the claimant had chronic insomnia, chronic thoughts of suicide, and a documented history of seriously aggressive social behavior. *Id.* at 729. These new symptoms "changed the picture so much" that the ALJ was not justified in relying upon the expert's stale opinion. *Id.*

By contrast, April has not shown that new symptoms emerged or that her condition greatly deteriorated after Dr. Kennedy's review in May 2019. As described in the preceding section, April exhibited fluctuations in hallucinations, mania, depression, anxiety, nightmares, and insomnia well before May 2019. Thus, her case is more analogous to more recent authority from the Seventh Circuit Court of Appeals distinguishing the facts of *Moreno*. *See Durham v. Kijakazi*, 53 F.4th

1089, 1096 (7th Cir. 2024) (evidence of a 2019 emergency room visit for external shortness of breath and palpitations did not require a new medical opinion because it bore a significant resemblance to a 2017 emergency room visit that was already in the record); *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (evidence of bodily tremors that resulted in emergency room visits did not require new medical opinion because treatment notes regarding tremors were in the record during the agency physician's review). Accordingly, April has not shown reversible error on this issue.

### C. Limitations in Concentration, Persistence, or Pace

The ALJ found that April had a mental RFC to perform light work, except as follows: (1) she can understand, remember, and carry out simple instructions; (2) make judgments commensurate with the functions of simple, repetitive tasks; (3) respond appropriately to brief supervisions and interactions with coworkers and work situations; and (4) deal with changes in a routine work setting. [Dkt. 11-12 at 19.] This language mirrors the expert medical opinions of Dr. Gange and Dr. Kennedy. [Dkt. 11-3 at 27, 45.]

April argues that her mental RFC is not supported by substantial evidence and that the ALJ did not build a logical bridge between the evidence and her mental RFC. [Dkt. 14 at 20-26.] Among other things, April argues that the ALJ failed to incorporate her moderate limitations in concentration, persistence, and pace. [*Id.* at 23-25.]

The ALJ found that April has moderate difficulties in concentration, persistence, or pace "based on clinical findings of appropriate attention but sometimes and typically appropriate thought content. Given the lack of substantial findings, more than moderate functional restrictions are not merited. However, crediting her claims of requiring reminders due to motivational deficits, the undersigned finds that she has greater than mild restrictions in this domain." [Dkt. 11-12 at

11

18.] Despite this finding, April's mental RFC does not incorporate these moderate difficulties in concentration, persistence, or pace limitations. *See Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.") (collecting cases).

The Commissioner makes no argument that April's mental RFC accounts for these limitations. In fact, the Commissioner does not even acknowledge the ALJ's finding about moderate concentration, persistence, or pace limitations at any point in his response brief. [*See generally* dkt. 17.] By failing to respond, the Commissioner waives any arguments he might have made on this issue. The Seventh Circuit Court of Appeals has "repeatedly stated [i]t is not this [C]ourt's responsibility to research and construct the [P]arties' arguments." *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (citations and internal quotation marks omitted). "A party waives any argument that it does not raise before the district court." *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002). If the Commissioner does not respond to an argument raised by the claimant, "[i]t is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response to this argument." *Carter v. Astrue*, 2012 WL 6527601, at *4 (S.D. Ind. Dec. 13, 2012).

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt*, 758 F.3d at 857. When neither the hypothetical nor the RFC incorporates the claimant's limitations in concentration, persistence, and pace, courts "will not assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id.* Here, the ALJ found that April's medical records support moderate limitations in her concentration, persistence, or pace,

12

but the ALJ did not incorporate those limitations into the RFC or the hypotheticals posed to the VE.  [Dkt. 11-12 at 19, 76-82.]  There is also no indication that the VE independently reviewed April's medical record.  In light of this error, April has shown reversible error on this issue.

### IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **REVERSE** the Commissioner's decision denying April P. disability benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4).  Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b).  The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO RECOMMENDED.**

Date: 08/01/2024

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email